IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN SOPEL

    *Plaintiff*,

v.

DYNCORP INTERNATIONAL AND
AMENTUM SERVICES, INC.,

    *Defendants*.

Civil Action No. ELH-23-430

**MEMORANDUM**

Plaintiff Brian Sopel was employed by defendant DynCorp International ("DynCorp") as a "Senior HVAC Technician" from February 24, 2020, until his termination on October 30, 2020. ECF 1 (the "Complaint"), ¶¶ 3, 6, 12, 26. This employment discrimination suit followed on February 16, 2023.

The Complaint contains two counts, lodged against DynCorp as well as its parent company, defendant Amentum Services, Inc. ("Amentum").[1] In particular, Count I asserts a claim for discrimination on the basis of disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. Count II asserts a claim of retaliation based on plaintiff's exercise of rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Plaintiff seeks compensatory damages, attorney's fees, and costs. ECF 1 at 10.

Defendants have filed a "Partial Motion to Dismiss" (ECF 7), supported by a memorandum. ECF 7-1 (collectively, the "Motion"). The Motion seeks dismissal of Count II on

---

[1] DynCorp became a wholly owned subsidiary of Amentum in November 2020. ECF 1, ¶ 4 n. 1.

the basis that it was filed outside the applicable statute of limitations.[2] Plaintiff opposes the Motion (ECF 13), supported by a memorandum. ECF 13-1 (the "Opposition). Defendants have replied. ECF 17 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Factual Background[3]

Plaintiff commenced employment with DynCorp on February 24, 2020. ECF 1, ¶¶ 6, 12. He was hired as a "certified Senior Heating Ventilation and Air Conditioning" ("HVAC") Technician. *Id.* ¶ 11. When Sopel was hired, he informed DynCorp of his disabilities. *Id.* ¶ 13.[4] DynCorp assigned Sopel to work on a contract it had with the federal government at Fort Meade, Maryland. *Id.* ¶¶ 14, 15.

On September 21, 2020, Sopel informed defendants that he was suffering "from debilitating knee pain and had to undergo surgery to correct a disability in his knee." *Id.* ¶ 31.[5] On

---

[2] Defendant has not responded to Count I. But, "the majority view [is] that a partial motion to dismiss stays the time to file a responsive pleading.*" Singhal & Company, Inc. v. VersaTech, Inc.,* JKyet B-19-01209, 2019 WL 4120434, at *6 n. 2 (D. Md. Aug. 28, 2019); *see also, Saman v. LBDP, Inc.*, DKC 12-1083, 2012 WL 5463031, at *4 n. 1 (D. Md. Nov. 7, 2012); *Tingley Systems, Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001).

[3] As discussed, *infra*, at this juncture I must assume the truth of the facts alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). And, as I also discuss, *infra*, I may consider the exhibits submitted by the parties. Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not always correspond to the page number imprinted on the particular submission.

[4] The Complaint does not specify any disabilities.

[5] Throughout the Complaint, plaintiff references "defendants." However, at the relevant time, Amentum had not acquired DynCorp. Nonetheless, I shall refer to defendants, in the plural, because plaintiff has done so.

2

October 5, 2020, Sopel "disclosed an additional disability." ECF 1, ¶ 32.[6] He also informed defendants that he "required FMLA leave to attend to this disability and to get the surgery performed." *Id.* ¶ 34. Sopel's application for FMLA leave was granted. *Id.* ¶ 35. According to plaintiff, defendants "knew, or reasonably should have known, that Mr. Sopel was scheduled to have knee surgery on October 23, 2020," *id.* ¶ 36, and that he "would be taking FMLA leave beginning on or around November 06, 2020." *Id.* ¶ 37.

On October 27, 2020, while Sopel was at work, he learned that his sister had contracted COVID-19. *Id.* ¶ 16.[7] Sopel informed his supervisor, Chad Via, of his potential exposure to COVID-19, but indicated that he had not had contact with his sister. *Id.* ¶¶ 17, 18. Via instructed Sopel to leave the work site and also told plaintiff that he could not return until he tested negative for COVID-19. *Id.* ¶¶ 18, 19, 29.

Sopel took a COVID-19 test that day. *Id.* ¶ 21. But the results were not available until October 30, 2020. *Id.* ¶ 22. Sopel's COVID-19 test came back negative on October 30, 2020, and he then asked his supervisor when he would be able to return to work. *Id.* ¶ 23.

On October 30, 2020, prior to returning to work, defendants' Human Resources Department contacted Sopel and informed him that he was being discharged for "'being late' for his Friday shift on October 30, 2020 . . . ." *Id.* ¶ 26. Although Sopel's shift "traditionally" began between 6:00 a.m. and 7:00 a.m., his COVID-19 test result did not arrive until after his shift began on October 30, 2020. *Id.* ¶¶ 27, 28. During the Equal Employment Opportunity Commission

---

[6] The Complaint does not specify the additional disability.

[7] If the surgery was scheduled for October 23, 2020, as alleged, ECF 1, ¶ 36, plaintiff does not explain why he was at work on October 27, 2020, or why his FMLA leave was to begin on November 6, 2020. ECF 1, ¶¶ 16, 37.

("EEOC") investigation, defendants indicated that Sopel was terminated "for failing to follow COVID-19 protocols, not for being late." ECF 1, ¶ 30.

Sopel was terminated on October 30, 2020, approximately one week before his FMLA leave was to begin. According to plaintiff, he was discharged "on the pretext of being late for work . . . ." *Id.* ¶ 38; *see id.* ¶ 64. In Sopel's view, the discharge was in retaliation for his request to take FMLA leave. *Id.* ¶ 68.

## II. Standard of Review

Defendants have moved to dismiss Count II of the Complaint under Fed. R. Civ. P. 12(b)(6). ECF 7 at 2. A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Nadendla v. WakeMed*, 24 F.4th 299, 304-05 (4th Cir. 2022); *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

4

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Nadendla*, 24 F.4th at 304-05; *Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration

in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

Notably, a plaintiff may not cure a defect in a complaint or otherwise amend a complaint by way of opposition briefing. *See, e.g.*, *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."); *Glenn v. Wells Fargo Bank, N.A.*, DKC-3058, 2016 WL 3570274, at *3 (D. Md. July 1, 2016) (declining to consider declaration attached to brief opposing motion to dismiss because, among other things, it included allegations not alleged in the suit); *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998); *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993).

### III. Discussion

#### A.  FMLA Generally

"The FMLA is intended 'to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons.'" *Rhoads v. F.D.I.C.*, 257 F.3d 373, 381 (4th Cir. 2001) (quoting *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 441 (4th Cir. 1999), *cert. denied*, 529 U.S. 1116 (2000), *abrogated on other grounds*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)). Under the FMLA, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . .[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employee is eligible if the employee "has been

7

employed . . . (i) for at least 12 months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). It is undisputed that plaintiff was an "eligible employee." At the end of such leave the employee is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A).

A "serious health condition" is an "illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11). "Continuing treatment" includes any "period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.115(c). "A chronic serious health condition is one which: (1) Requires periodic visits . . . for treatment . . .; (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." *Id.* In some cases, absences "attributable to incapacity" due to a chronic serious health condition "qualify for FMLA leave even though . . . the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack[.]" *Id.* § 825.115(f).

There are two types of claims under the FMLA: "(1) 'interference,' in which the employee alleges that an employer denied or interfered with her substantive rights under the FMLA, and (2) 'retaliation,' in which the employee alleges that the employer discriminated against her for exercising her FMLA rights." *Edusei v. Adventist Healthcare, Inc.*, DKC-13-0157, 2014 WL

3345051, at *5 (D. Md. July 7, 2014) (quoting *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294-95 (4th Cir. 2009)); *see also Fry v. Rand Construction Corporation*, 964 F.3d 239, 244 (4th Cir. 2020).

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). "While the FMLA does not specifically forbid discharging an employee in retaliation for his use of FMLA leave, 29 C.F.R. § 825.220(c) states that employers are 'prohibited from discriminating against employees or prospective employees who have used FMLA leave' and that 'employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions.'" *Dotson*, 558 F.3d at 294-95; *see also Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 655 (D. Md. 2013). Thus, courts have interpreted the FMLA to provide a cause of action for retaliation. *Dotson*, 558 F.3d at 295.

An interference claim "'merely requires proof that the employer denied the employee his entitlements under the FMLA[.]'" *Bosse v. Baltimore Cty.*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)). In contrast, retaliation requires "'proof of retaliatory intent.'" *Bosse*, 692 F. Supp. 2d at 588 (quoting *Stallings*, 447 F.3d at 1051); *see also Edusei,* 2014 WL 3345051, at *6. In addition to refusing FMLA leave, interference includes "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

FMLA retaliation claims are analogous to Title VII retaliation claims. *See*, *e.g.*, *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). The elements of an FMLA retaliation claim are as follows: (1) "'[the plaintiff] engaged in protected activity'"; (2) "'[his employer] took adverse action against [him]'"; and (3) "'the adverse action was causally connected to the plaintiff's protected activity.'" *Boone v. Bd. of Governors of Univ. of North Carolina*, 858 F. App'x 622, 624 (4th Cir. 2021) (per curiam) (quoting *Vannoy v. Fed. Rsrv. Bank of Richmond*, 827 F.3d

9

296, 304 (4th Cir. 2016)); *see also Adams v. Anne Arundel County Public Schools*, 789 F.3d 422, 429 (4th Cir. 2015); *Wright v. Southwest Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006).

### B. Discussion

As noted, plaintiff was terminated on October 30, 2020, and filed suit on February 16, 2023. Defendants argue that Count II should be dismissed as untimely. ECF 7-1 at 2.

In particular, defendants observe that FMLA has a two-year limitation period, which can only be extended to three years for a willful violation. ECF 7-1 at 1; *see* § 29 U.S.C. 2617(c)(1); § 2617(c)(2). Because the Complaint was brought more than two years after the alleged violation, it may only proceed under the theory of a willful violation. *Id.* at 1-4. And, defendants argue that plaintiff's Complaint does not allege facts sufficient to show a willful violation of the FMLA. *Id.* at 5.

Plaintiff acknowledges that the word "willful" was not specifically used in the Complaint, but he contends that no "special phrasing" is required, so long as the defense is provided with "sufficient or fair notice" of the claims. ECF 13-1 at 6 (citing *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013)). According to plaintiff, drawing "reasonable inferences in a light most favorable to Mr. Sopel," a fact finder could conclude that defendants acted willfully in violating Sopel's rights under the FMLA. ECF 13-1 at 10 (citing *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997)). In the Reply (ECF 17), defendants reiterate that the Complaint is devoid of allegations sufficient to constitute a willful violation of the FMLA.

Under the FMLA, claims are ordinarily required to be filed no later than two years after the date of the last alleged violation. 29 U.S.C. § 2617(c)(1). However, if a violation is "willful," the action may be brought within three years of the alleged violation. 29 U.S.C. § 2617(c)(2).

The FMLA does not define "willful."  But, courts have said that a willful violation occurs when an employer knew or showed reckless disregard for whether its conduct was prohibited by the requirements of the FMLA. *See Bosse*, 692 F. Supp 2d at 583.  Moreover, a mental state may be alleged generally. *Lesser v. Balt. City Bd. of Sch. Comm'rs,* JKB-17-046, 2017 WL 2733938, at *2 (D. Md. June 26, 2017) (concluding that a plaintiff may "generally" plead a defendant's mental state in the context of an FMLA retaliation claim, and citing Fed. R. Civ. P. 9(b)); *see also Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 664 (E.D. Va. 1998), *aff'd*, 182 F.3d 909 (4th Cir. 1999). And, "[w]hen a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period." *Honeycutt v. Balt. Cnty., Md.* ("*Honeycutt I*"), JFM-06-0958, 2006 WL 1892275, at *2 (D. Md. July 7, 2006) (citations omitted); s*ee also Moore v. Wash. Hosp. Ctr.*, DKC-11-3742, 2-12 WL 2915165, at *3 (D. Md. July 16, 2012) (recognizing that courts in the District of Maryland have applied a three-year statute of limitations where plaintiffs have made a "general averment as to willfulness").

*Lesser*, 2017 WL 2733938, is instructive.  In that case, Judge Bredar analogized the FMLA to the Fair Labor Standards Act, because the limitations provisions are similar.  Notably, he observed that "the question of whether an alleged violation is willful is not an element of a plaintiff's claim requiring supporting allegations in the complaint, but rather an anticipation of a limitations defense that a defendant might raise as the case advances." *Id.* at *2; *see Rose v. Harloe Mgmt. Corp.*, GLR-16-761, 2017 WL 193295, at *4 (D. Md. Jan. 17, 2017).

Defendants rely primarily on *Clary v. Raville*, PWG-20-2521, 2021 WL 4169489, at *4 (D. Md. Sep. 14, 2021), and *Honeycutt v. Balt. Cnty., Md.* ("*Honeycutt II*")*,* JFM-06-0958, 2007 WL 1858691, at *4 (D. Md. June 18, 2007), *aff'd*, 278 F. App'x 292 (4th Cir. 2008)), for the

11

proposition that the facts alleged in the Complaint are insufficient to prove willfulness. ECF 7-1 at 3-5. But, *Clary* cuts against the defendants' arguments. In *Clary,* Judge Grimm stated, 2021 WL 4169489, at *4 (emphasis in original):[8]

> Defendants in their motion to dismiss rely heavily on this Court's decision in *Honeycutt v. Baltimore County* [*i.e.*, *Honeycutt* II], but in that case, this Court granted *summary judgment* in favor of Baltimore County because it found the record was absent of willfulness on the County's part and therefore the Plaintiff's claims were barred based upon the two-year statute of limitations. Mot. Memo. at 7-8 (citing *Honeycutt* [II]). The procedural differences between *Honeycutt* and this case are significant. In granting the motion for summary judgment, the Court in *Honeycutt* recognized it had previously found that Plaintiff's allegations were sufficient to withstand a motion to dismiss, and from there the parties completed discovery. *Id.* at *3. In its prior decision to deny the Defendant's motion to dismiss, the Court expressly noted that "a general averment as to willfulness should be sufficient to trigger the three-year limitations period." *Honeycutt I*, 2006 WL 1892275, at *2. Because I find that Plaintiff did provide a general averment as to willfulness, at this stage of the litigation, the Defendant's motion to dismiss will be denied and the three-year statute of limitations will apply. Of course, as in *Honeycutt*, after discovery is completed, if the record shows no willfulness on the part of Defendants, the Defendants may seek summary judgment.

As *Clary* makes clear, the procedural posture of the case is significant to the analysis. This case is at the motion to dismiss stage, not the summary judgment phase of litigation.

Sopel alleges that he was terminated approximately seven days after defendants should have been aware of his need for FMLA leave. ECF 1, ¶¶ 36, 38. And, Sopel was discharged approximately seven days prior to the commencement of his FMLA leave. *Id.* ¶¶ 37, 38. Further, he asserts that his termination was pretextual, because he was unable to report to work due to pending COVID-19 test results. *Id.* ¶¶ 25-29, 38. And, he alleges that defendants told him that he was being fired due to being late, yet defendants told the EEOC that he was terminated for failure to follow COVID-19 protocols. ECF 1, ¶¶ 26, 30.

---

[8] Judge Grimm is now a retired United States District Judge.

Defendants contend that plaintiff's admission that his FMLA request was initially approved, *id.* ¶ 35, indicates that a willful violation did not occur. ECF 7-1 at 5. It is true that "[c]ourts have generally found no willfulness where the employer granted the employee's request for leave." *Smith v. BHS Hospital Services Inc.*, CBC-20-1062, 2022 WL 2344156, at *11 (D. Md. June 29, 2022); *see also Shipton v. Baltimore Gas & Electric Co.*, LKG-20-1926, 2023 WL 2894951, at *8 (D. Md. Apr. 11, 2023) (concluding that defendant "repeatedly granted Plaintiff's FMLA leave requests, starting in 2015, and continuing into 2017 and 2018," which indicated a lack of willfulness on the employer's part). However, Sopel was discharged "one week prior to his taking of FMLA leave." ECF 1, ¶ 68. Thus, a factfinder could infer that the approval of FMLA leave was a sham and the grounds for termination were pretextual.

Of relevance here, "[n]o magic words are necessary to invoke the protections of the FMLA." *Dotson,* 558 F.3d at 293. To be sure, Sopel's retaliation claim could have been drafted more precisely. But, even assuming that willfulness must be pleaded, the Complaint is sufficient to permit the inference of willfulness. *See Townes v. Maryland Department of Juvenile Services*, JKB-15-1093, 2015 WL 5928114 (D. Md. Oct. 8, 2015); *see also Fortune v. Gaylor Electric, Inc.*, WCM-19-346, 2020 WL 6038295, at *7 (W.D.N.C. May 28, 2020) (concluding it was "plausible that Defendants terminated Plaintiff in retaliation for taking leave," and therefore plaintiff "sufficiently alleged a willful violation of the FMLA").

For the reasons discussed, I shall deny the Motion. An Order follows.

Date:  April 21, 2023                         /s/
                                              Ellen L. Hollander
                                              United States District Judge